IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:11-cr-00083-4 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| ALDO VILLARREAL | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's pro-se motion that requests compassionate release under 18 U.S.C. § 3582(c)(1)(A)[1] and appointment of counsel (Doc. No. 1225, "Motion"),[2] as well as Defendant's supplemental motion (Doc. No. 1227, "Supplemental Motion"), which serves in essence not as a separate motion but rather as an attempt to provide additional support for the Motion.[3] The Government has responded in opposition to Defendant's Motion, arguing that

---

[1] A motion under Section 3582(c)(1)(A) is a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. The granting of a motion for sentence *reduction* under Section 3582(c)(1)(A) would not necessarily result in the defendant's immediate *release*. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (quoting *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019)). Nevertheless, such motions generally are known as ones for "compassionate release." *Id.* at n.2 ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020). This reflects the fact they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

[2] This is Defendant's second attempt at receiving a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A). Defendant filed his first motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 1172) on May 4, 2020, (*Id.*). That motion was denied on the merits by the Court—although by a different judge than the undersigned—via an order dated July 31, 2020 (Doc. No. 1184).

Like last time, this time Defendant argues that his general fear of contracting COVID-19 (among other things) is an extraordinary and compelling reason that warrants early release.

[3] However, because the Supplemental Motion was characterized by Defendant as a motion, and because motions by their nature require some ultimate disposition, the Court below provides a technical disposition of the Supplemental Motion (a denial, as it turns out).

neither Defendant's fear of contracting COVID-19 nor his alleged rehabilitation efforts, or a combination of the two, amount to "extraordinary and compelling" reasons that would justify relief. (Doc. No. 1250, "Response").

For the reasons set forth herein, the Court agrees with the Government that Defendant has not established any extraordinary and compelling reason for early release, as required for release under 18 U.S.C. § 3582(c)(1)(A). In addition, the Court has independently assessed Defendant's request for appointment of counsel and finds that he fails to present any unique circumstances justifying such an appointment. Accordingly, Defendant's Motion is DENIED.

## BACKGROUND

Defendant and seventeen (17) co-defendants were named in a two-count indictment filed on April 20, 2011. (Doc. No. 45). Defendant, along with fifteen (15) of his co-defendants, was charged in Count One conspiracy to distribute and distribution of five (5) kilograms or more of a mixture and substance containing cocaine and 100 kilograms or more of a mixture and substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*). Defendant was not charged in Count Two.

On October 31, 2012, Defendant was named along with seven (7) co-defendants in a six-count Superseding Indictment (Doc. No. 457). Defendant was named only in the first two counts. Specifically in Count One he was charged (along with seven co-defendants) with conspiracy to possess with the intent to distribute and to distribute five (5) kilograms or more a substance containing cocaine and 100 kilograms or more of a substance containing marijuana, in violation of 21 U.S.C. § 846. And in Count Two he was charged with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

On April 3, 2013, Defendant was named along with four (4) co-defendants in a six-count

Second Superseding Indictment (Doc. No. 547) which again named Defendant in (and only in) Counts One and Two. Those two counts were the same as in the First Superseding Indictment, except that this time there were fewer co-defendants charged along with him in each count.

On July 28, 2015, after a nine-day jury trial, a jury found Defendant guilty on Count One and Count Two of the Second Superseding Indictment. (Doc. No. 940). On December 21, 2015, United States District Judge William J. Haynes, Jr. sentenced Defendant to life imprisonment on Count One, and twenty (20) years imprisonment on Count 2, to run concurrently. (Doc. No. 1089). Defendant has been serving his sentence at United States Penitentiary Canaan. Consistent with the fact that Defendant received a life sentence, the Inmate Locator of the Bureau of Prisons ("BOP") currently states Defendant's release date as "LIFE." *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed on March 6, 2025).

ANALYSIS

I. *Request for Appointment of Counsel*

Defendant seeks appointment of counsel in relation to his request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 1225 at 10). The decision whether to appoint counsel for the purpose of seeking compassionate release is within the sound discretion of the Court.[4] *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *Id.* (citing *Lavado v. Keohane*, 992

---

[4] The Sixth Amendment prescribes the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Stephens*, No. 06-CR-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020) (citing *United States v. Wade*, 388 U.S. 218, 224 (1967). It does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action.").

F.2d 601, 605 (6th Cir. 1993)).

A compassionate-release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim unrepresented). Defendant has failed to articulate why he is unable to present his request for compassionate release pro se. Furthermore, the Court believes that it can fairly adjudicate such motions even though one side (and not the other) is unrepresented by counsel, as the compassionate release arguments presented by Defendant are straightforward, and not beyond the capability of an ordinary pro-se litigant.

Accordingly, Defendant's request for appointment of counsel is DENIED.

II. *Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), Generally*

Defendant seeks modification (and in particular a reduction) of his sentence based on a few alleged "extraordinary and compelling" reasons under U.S.S.G. § 1B1.13.[5] Before the Court can reach the merits of this request, it must first determine that Defendant exhausted his administrative remedies. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

The exhaustion requirement is satisfied when a prisoner has fully exhausted with the prison all administrative rights to appeal *or* waited thirty (30) days after the prisoner's first request for compassionate release to the prison. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d 831 at 833–34. It

---

[5] Prior to 2018, only the Director of the BOP could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115- 391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act, a district court may under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory.").

is a defendant's burden to show he has exhausted administrative remedies and is entitled to compassionate release. *United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. May 1, 2020) (citations omitted); *United States v. Faraj*, No. 2:13-CR-20564-01, 2021 WL 1857190, at *1 (E.D. Mich. May 10, 2021) (citation omitted). Here, Defendant claims that he waited the required thirty (30) days before filing his Motion with the Court.[6] (Doc. No. 1225). The Government supports this claim, (Doc. No. 1229 at 7844), and therefore, the Court finds that Defendant has exhausted his administrative remedies, and that it may proceed, in its discretion, with determining whether to grant compassionate release to Defendant.

To grant compassionate release, the Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) determine that the factors in Section 3553(a), to the extent they apply, are consistent with granting the defendant the requested relief. *Jones*, 980 F.3d at 1106 (quoting *United States v. Ruffin*, 978 F.3d 1000, 1003-06 (6th Cir. 2020)). A motion for compassionate release may be denied when any of these three requirements is not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Defendant bears the burden to persuade the Court that compassionate release is appropriate. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020).

### *Extraordinary and Compelling Reasons*

Prior to the First Step Act of 2018, the BOP had sole authority to file compassionate-release

---

[6] Defendant provides two separate dates, September 5, 2022, and November 3, 2023, on which he allegedly submitted requests for compassionate release to the prison's warden. (Doc. Nos. 1225, 1231-1). Based on the filings, it appears to the Court that two separate requests were submitted by the Defendant to the prison's warden. As the first submission, recorded in Defendant's Motion, pre-dates the filing date by thirty days, the Court find that the thirty-day requirement has been satisfied for Defendant's Motion.

motions, under limited circumstances outlined under U.S.S.G. § 1B1.13. *United States v. McCall*, 56 F.4th 1048, 1053-54 (6th Cir. 2002). *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. Sent'g Comm'n 2016). The First Step Act of 2018 altered this scheme by authorizing defendants to file compassionate-release motions on their own behalf. *See McCall*, 56 F.4th at 1054. But the Sentencing Commission did not promptly update § 1B1.13 to reflect this change; instead, it continued to state that relief was available "only upon motion by the Director of the [BOP]." *Id.*; U.S.S.G. § 1B1.13 cmt. n.4 (U.S. Sent'g Comm'n 2021).

In the absence of an amended policy statement, almost all circuit courts held that § 1B1.13 at that time was inapplicable to defendant-filed motions.[7] As such, the Sixth Circuit determined that, until the Sentencing Commission updated its guidance, § 1B1.13 did not apply to cases in which a defendant filed a compassionate-release motion, *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024) (citing *Jones*, 980 F.3d at 1109), thus leaving district courts with discretion to decide what constituted extraordinary and compelling reasons when evaluating a defendant-filed motion. *United States v. Hunter*, 12 F.4th 555, 561–62 (6th Cir. 2021).

But that discretion was not unbridled. *Hunter*, 12 F.4th at 562 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Instead, the phrase "extraordinary and compelling" was to be interpreted "'in accord with the ordinary public meaning of its terms at the time.'" *McCall*, 56 F.4th at 1055 (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020)). Congress enacted the compassionate release statute in 1984. *Id.* at 1052-53. Given the respective definitions

---

[7] *See, e.g., United States v. Ruvalcaba*, 26 F.4th 14, 20–24, 28 (1st Cir. 2022); *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. Andrews*, 12 F.4th 255, 259 (3rd Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1107–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). But *see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that the policy statement is applicable to motions filed by defendants).

for those two terms at that time (which may not have materially changed since then), "extraordinary and compelling reasons" meant reasons that are both (1) "'most unusual,' 'far from common,' and 'having little or no precedent,'" (i.e., extraordinary) and (2) "'forcing, impelling, driving'" (i.e., compelling). *Hunte*r, 12 F.4th at 562 (quoting Webster's Third New International Dictionary: Unabridged 463, 807 (1971)); *see also McCall*, 56 F.4th at 1055 (same). Courts also could not treat "nonretroactive changes in sentencing law" as constituting "extraordinary and compelling reasons" for awarding relief. *McCall*, 56 F.4th at 1055.

Effective November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13, revising the Sentencing Commission's policy statement as to what may count as an extraordinary and compelling reason for relief, *regardless* of who files the motion.[8] And to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, find that granting such relief "is consistent with" Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist. *See* 18 U.S.C. § 3582(c)(1)(A). The enumerated circumstances under § 1B1.13 that may constitute extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A) are as follows:

> (1) certain medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) defendant, while in custody, becoming the victim of certain sexual or physical abuse committed by or at the direction of a correctional officer; (5) any other circumstance or combination of circumstances that, when considered by themselves or together with any of the four just-listed circumstances, are similar in gravity to those circumstances; and (6) the defendant having received an unusually long sentence.

---

[8] At present, there is considerable uncertainty as to whether the amended policy statement is invalid (on the alleged grounds that it was promulgated in excess of its congressionally-delegated authority and in violation of the separation of powers) and, if not, is binding on courts. *See United States v. Mitchell*, No. 1:12-CR-20332-01, 2024 WL 3673533, at *3 n. 2 (E.D. Mich. Aug. 6, 2024). For purposes of the Motion, however, the Court will assume that U.S.S.G. § 1B1.13 as amended is valid and binding on the Court.

U.S.S.G. § 1B1.13.

Here, Defendant bases his request for compassionate release on three purported extraordinary and compelling reasons: (1) his alleged medical circumstances (i.e. fear[9] of contracting COVID-19); (2) his alleged rehabilitation efforts; and (3) his having received an allegedly disproportionate sentence.

### (1) Medical Circumstances of the Defendant

Defendant argues that the Court should reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) "to prevent the spread of COVID-19 . . . ." (Doc. No. 1225, at 4). Defendant claims that a "minimal medical issue"—which he does not identify in either his Motion or Supplemental Motion—and being a former cigarette-smoker heightens his risk of severe illness or death if he contracts COVID-19. *Id*. In its Response, the Government points to Defendant's own asseveration that he requires no medical care if released and argues that Defendant has provided no medical records in support of being a former smoker.[10] (Doc. No. 1229).

A defendant's medical circumstance can give rise to an extraordinary and compelling reason, under § 1B1.13(b)(1), if:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> [*or*]

---

[9] The Court uses the shorthand term "fear" to refer to the increased risk (to Defendant in particular) of severe illness or death that (according to the Motion) would arise if Defendant were to contract COVID-19. The term is appropriate because Defendant does appear to express have a *subjective* fear of death—albeit one based on what he claims are *objective* risk factors (e.g., being a former smoker and the existence of certain medical conditions identified by the CDC).

[10] The Government also argues that Defendant failed to provide medical records supporting "his vague suggestion that his Body Mass Index ("BMI") is above 30." (Doc. No. 1229, at 4). The Court is unconvinced that Defendant has made such a suggestion merely by briefly and generally referencing CDC guidelines, without any Defendant-specific information.

> (B) The defendant is--
>> (i) suffering from a serious physical or medical condition,
>> (ii) suffering from a serious functional or cognitive impairment, or
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> [*or*]
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1). The language of (b)(1) certainly indicates that only the severe medical conditions would suffice as extraordinary and compelling (e.g., "suffering from terminal illness," suffering "from which [a defendant] is not expected to recover," and "long-term or specialized medical care…without which the defendant is at risk of serious deterioration in health or death."). Defendant complains of an unnamed "minimal medical condition," which hardly approximates the severity as suggested throughout § 1B1.13(b)(1)(A), (B), or (C). Moreover, Defendant uses the word "minimal," which in and of itself signifies that Defendant's medical condition is manageable, if not inconsequential. And any lingering uncertainty as to the seriousness of Defendant's "minimal medical condition" is eradicated by Defendant's "Proposed Release Plan," in which he provides that he "do[es] not require medical care if released," "[has] not been prescribed medication, require[s] no medical equipment, do[es] not need self-care…" (Doc. No. 1227, at 9).

In addition to the above, Defendant argues that his fear of contracting COVID-19 gives rise to an extraordinary and compelling reason for release. A general fear of COVID-19 infection is not an extraordinary and compelling reason for compassionate release. *See United States v. French*, No. 3:10-CR-00117-1, 2021 WL 1316706, at *5 (M.D. Tenn. Apr. 8, 2021) (Richardson,

J.). The Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. *Id*. (quoting *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020)).

Moreover, COVID-19 vaccines are available to all federal prisoners, including Defendant. *See, e.g., Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. on the Judiciary*, 117 Cong. (2021) (statement of Michael D. Carvajal, Dir. Fed. Bureau of Prisons). *See also United States v. Ward*, No. 3:13-CR-00048, 2021 WL 6066447, at *3 (M.D. Tenn. Dec. 22, 2021) (Richardson, J.). "[W]ith access to the [COVID-19] vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Defendant does not indicate his COVID-19 vaccination status in his Motion; however, just by having access the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on any supposed underlying health conditions. And if Defendant has not been vaccinated, he has failed to advance a "compelling reason" justifying such a failure to be vaccinated, by failing to address the vaccine at all in his Motion. *Id.*

Lastly, Defendant has not shown early release would ameliorate the risk of COVID-19. It is beyond dispute that persons outside of prison remain susceptible to COVID-19. So, to the extent that Defendant's argument is that he needs to be released into the community to better evade COVID-19, the argument is a non-starter because there is no reason to conclude that his risk of infection from COVID-19 would be reduced were he released from prison. *See United States v. Inman*, 583 F. Supp. 3d 1117, 1124 (M.D. Tenn. 2022) (Richardson, J.).[11]

---

[11] Through no fault of Defendant, his Motion has been pending for a lengthy period of time (although, as noted, he has already had a prior compassionate release motion adjudicated). During that period, the risk and degree of harm posed by COVID-19 surely have changed (likely not in a way that strengthens the

### (2) Rehabilitation of the Defendant

Defendant next argues for release based on his rehabilitative efforts while incarcerated. (Doc. Nos. 1225 and 1227). Defendant's "efforts" include "hours of educational courses," being "more productive," and "taking younger inmates under his wing." (Doc. No. 1225, at 9). The Government (rightfully) refers to Defendant's argument as an "undocumented assertion of rehabilitation." (Doc. No. 1229, at 7).

Defendant's purported rehabilitative efforts are in no way unusual. Even if the Court were to accept Defendant's perfunctory showing of rehabilitative efforts, Defendant has shown no other circumstances that could be combined with his rehabilitative efforts to amount to extraordinary and compelling reasons for release. *See* 28 U.S.C. § 994(t); *United States v. Washington*, 122 F.4th 264, 268 (6th Cir. 2024) ("Congress has instructed that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for a sentence reduction."). Given that the Court has determined that Defendant's medical circumstances do not rise to the level of extraordinary and compelling, then Defendant's rehabilitation would have to be considered extraordinary and compelling standing alone, which is inconsistent with congressional intent.

Therefore, the Court is unable to find that extraordinary and compelling reasons exist based on rehabilitative efforts of Defendant.

### *Summary*

Defendant has shown no extraordinary and compelling reasons for a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A).[12] Accordingly, the Court need not proceed to the

---

Motion). but those changes do not affect the above reasons as to why the specter of COVID-19 does not afford Defendant grounds for relief.

[12] For the first time in his Supplemental Motion, Defendant argues his life sentence is "grossly disproportionate" to the "twenty-year, fifteen-year, and [ten]-year mandatory minimum[s] that now appl[y] in light of the First Step Act." (Doc. No. 1227, at 3). Based on this, as best the Court can tell, Defendant

remaining steps of the compassionate-release analysis (i.e., an analysis of the Section 3553(a) factors).[13] *See Elias*, 984 F.3d at 519 ("district courts may deny compassionate-release motions

---

contends that his sentence is "disproportionate" because it was imposed when the U.S. Sentencing Guidelines were mandatory (i.e., when imposition of sentence within the applicable guideline range generally was mandatory), which (ever since 2004) has not been the case. This reasoning does not make any sense to the Court. Whether or not the sentence was imposed under *mandatory* guidelines, the fact is that Defendant received a Guidelines sentence; the Sentencing Guidelines called for life imprisonment for Defendant, and Defendant fails to explain how his sentence could possibly be "disproportionate" if it is a Guidelines sentence.

But even if his sentence could somehow be considered "disproportionate," receiving a disproportionate sentence is not an extraordinary and compelling reason under § 1B1.13(b). *See* U.S.S.G. § 1B1.13(b). The length of the sentence can constitute an extraordinary and compelling reason under § 1B1.13(b), if a defendant received an "unusually long sentence"—albeit only when certain additional conditions are met—and to say that a sentence is "disproportionate" is not necessarily to say that the sentence is usually long.

It appears that Defendant's disproportionality argument is either (1) a challenge to the merits of the sentencing judge's determination of what sentence is appropriate under 18 U.S.C. § 3553(a), as evaluated during the sentencing phase; or (2) a challenge to his sentence's compliance with the Eighth Amendment on the alleged grounds that the sentence allegedly is "cruel and unusual[ly]" long. Both challenges are unavailing here. First, the Court's only role here is to assess whether all requirements for compassionate release are satisfied, including the existence of "extraordinary and compelling" reasons for release. A challenge (including one based on a sentence being too long compared to sentences received by others) to the sentencing judge's decision under Section 3553(a) must be made by direct appeal and/or a (timely and otherwise procedurally proper) motion to vacate, set aside, or correct the sentence under 28 U.S.C.A. § 2255—not via a compassionate-release motion. *See United States v. Arojojoye*, 806 F. App'x 475 (7th Cir. 2020). Second, a compassionate release is not the proper vehicle for a claim under the Eight Amendment. *See United States v. Phillips*, No. 21-6068, 2022 WL 1112770, at *3 (6th Cir. Apr. 14, 2022) (differentiating between an Eighth Amendment claim and a compassionate-release motion).

[13] The sentencing factors set forth in Section 3553(a) are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—

when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

## CONCLUSON

Defendant has not shown any extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant's Motion (Doc. No. 1225), and the related Supplemental Motion (Doc. No. 1227), are **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
    i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
    ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.